For appropriate action and follow up
Original to Corporation Counsel
Copy to file

WONG FLEMING
A Professional Corporation
821 Alexander Road, Suite 150
P.O. Box 3663
Princeton, New Jersey 08543-3663
(609) 951-9520
Attorneys for Plaintiff Janell Robinson

| | |
|---|---|
| JANELL ROBINSON,<br><br>                    Plaintiff,<br><br><br>          v.<br><br><br>CITY OF NEWARK; NEWARK CITY POLICE DEPARTMENT, and in their official and individual capacities, ANTHONY F. AMBROSE III, IRVING BRADLEY, and DENNIS SANDERS, jointly and severally,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION- ESSEX COUNTY<br><br>Docket No. ESX-L-005145-06<br><br>Civil Action<br><br><br>**SUMMONS** |

From:  The State of New Jersey
To:      City of Newark

        The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The verified complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service to the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, N.J. 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford to pay an attorney, call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: August 8, 2006

DONALD F. PHELAN/s/
DONALD F. PHELAN, Clerk of the
Superior Court

Name of defendant to be served:          City of Newark

Address of defendant to be served:       920 Broad Street, Room 306
                                         Newark, NJ 07102

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad St., P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept
Brennan Court House – 1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

3

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFFERAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFFERAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the
Superior Court
Civil Division Office
Court House
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

4

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division – Civil Part pleadings (not motions) under Rule 4:5-1.
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE:   CK   CG   CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME<br>Linda Wong, Esq. | TELEPHONE NUMBER<br>( 609 ) 951-9520 | COUNTY OF VENUE<br>Essex |
| --- | --- | --- |
| FIRM NAME (If applicable)<br>Wong Fleming, P.C. | | DOCKET NUMBER (When available) |
| OFFICE ADDRESS<br>821 Alexander Road, Suite 150<br>P.O. Box 3663<br>Princeton, NJ 08543-3663 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND   ☑ YES   ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Janell Robinson | CAPTION<br>Janell Robinson v. City of Newark, Newark City Police Department, and in their official and individual capacities, Anthony F. Ambrose III, Irving Bradley, and Dennis Sanders, jointly and severally |
| --- | --- |
| CASE TYPE NUMBER<br>(See reverse side<br>for listing)       618 | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES ☑ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES<br>PENDING?   ☐ YES ☑ NO | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING<br>ANY PARTIES (arising out of<br>same transaction or occurrence)?   ☐ YES ☑ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE   ☑ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION | | |
| --- | --- | --- |
| A. DO PARTIES HAVE A CURRENT,<br>PAST OR RECURRENT<br>RELATIONSHIP?   ☑ YES ☐ NO | IF YES, IS THAT<br>RELATIONSHIP | ☑ EMPLOYER-EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain) _____<br>☐ FAMILIAL   ☐ BUSINESS _____ |
| B. DOES THE STATUTE GOVERNING THIS<br>CASE PROVIDE FOR PAYMENT OF FEES<br>BY THE LOSING PARTY?   ☑ YES ☐ NO | | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| ♿ DO YOU OR YOUR CLIENT NEED ANY<br>DISABILITY ACCOMMODATIONS?   ☐ YES ☑ NO | IF YES," PLEASE IDENTIFY THE<br>REQUESTED ACCOMMODATION: _____ |
| --- | --- |
| WILL AN INTERPRETER BE NEEDED?   ☐ YES ☑ NO | IF YES, FOR WHAT LANGUAGE: _____ |

ATTORNEY SIGNATURE

Revised effective 4/1/05

**WONG ♦ FLEMING, P.C.**
821 Alexander Road, Suite 150
P.O. Box 3663
Princeton, New Jersey 08543-3663
(609) 951-9520
Attorneys for Plaintiff
JANELL ROBINSON

RECEIVED - CLERK
U.S. DISTRICT COURT

2006 SEP 11  A 11: 26

|  |  |
|---|---|
| JANELL ROBINSON,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CITY OF NEWARK; NEWARK CITY POLICE DEPARTMENT, and in their official and individual capacities, ANTHONY F. AMBROSE III, IRVING BRADLEY, and DENNIS SANDERS, jointly and severally,<br><br>　　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ESSEX COUNTY<br>Docket No. ESX-L- 5145-06<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff, Janell Robinson, residing at 160 Lehigh Avenue, Newark, New Jersey 07112, says by way of Complaint against Defendants, City of Newark, City of Newark Police Department, and in their official and individual capacities, Anthony F. Ambrose III, Irving Bradley, and Dennis Sanders, as follows:

## PARTIES

1.　　Plaintiff Janell Robinson is a police officer with the Newark City Police Department, where she has been employed since 1998.

2.　　Defendant City of Newark is a governmental body that discharges certain constitutional and legal responsibilities for and has oversight of the governmental agencies, departments and groups within its city, including the Newark City Police Department.

3.     Defendant City of Newark Police Department is the police department for the City of Newark, existing under the laws of the State of New Jersey.

4.     Defendant Irving Bradley is currently Chief of Police of the Newark City Police Department and in such capacity has had and continues to have supervisory authority over Ms. Robinson, and direct responsibility for the terms and conditions of her employment, including promotions, raises and day-to-day assignments and activities.

5.     Defendant Anthony F. Ambrose III is the Police Director of the Newark City Police Department and in such capacity has had and continues to have supervisory authority over the Newark City Police Department and all of its officers and employees, including the Chief of Police of the Newark City Police Department.

6.     Defendant Dennis Sanders is a Sergeant with the Newark City Police Department.

## FACTS

7.     Ms. Robinson has worked for the City of Newark since October 1994 and for the Newark City Police Department since December 1996.  During her employment with the Department, Ms. Robinson has been a hard-working and dedicated employee and has consistently received positive work evaluations from her supervisors.  For several years her performance has ranked in the top ten percent of officers in her district.  In addition, Ms. Robinson has been instrumental in the development of the Partners Against Crime (PAC) program, a federally funded program aimed at reducing crime by establishing "safe havens" for participating youngsters in Newark's South District.

8.     Despite Ms. Robinson's excellent performance and contributions to the Newark City Police Department, the City of Newark unlawfully retaliated against Ms.

Robinson and subjected her to a hostile work environment in violation of, among other things, the New Jersey Law Against Discrimination and public policies of the State of New Jersey, because she aided and encouraged fellow police officer, Sergeant Ellen McMillan, who brought sexual harassment charges against the City of Newark and Defendant Irving Bradley, and because she associated with Ms. McMillan and with Deputy Chief Bryan Morris.

9.     It was widely known within the Department that Ms. Robinson was a close friend of Sergeant McMillan. In fact, Sergeant McMillan commonly referred to Ms. Robinson as her "goddaughter" when speaking to other members of the Department.

10.     Ms. Robinson's association with Deputy Chief Bryan Morris was also widely known, as Ms. Robinson held a fundraising dinner for Sharpe James, Lynell Robinson (her father) and Bryan Morris on September 15, 2001, and raised over $30,000. Ms. Robinson also worked for Bryan Morris when he was South District Commander.

11.     In August 2001, Sergeant McMillan told Ms. Robinson that Lieutenant Irving Bradley had been making inappropriate sexual remarks towards her. Ms. Robinson urged Sergeant McMillan to report the harassment.

12.     On December 12, 2001, Sergeant McMillan filed an internal complaint with Captain John Scott-Bey regarding the sexual harassment by Lieutenant Bradley.

13.     Almost immediately following the filing of the internal complaint by Sergeant McMillan against Lieutenant Bradley, Ms. Robinson began to be subjected to continuing and unrelenting retaliation and reprisals by Defendants.

14.     On January 1, 2002, less than one month after Sergeant McMillan reported the harassment, Ms. Robinson's tour was changed from a day shift to an evening and

late-night shift, and her schedule was changed to four days on and two days off, instead of the four days on and four days off as previously established in November 2001. When Ms. Robinson inquired as to the reason for the change, Captain Scott-Bey told Ms. Robinson that he had nothing to do with the change and that Lieutenant Bradley was responsible for the decision.

15.    When Ms. Robinson objected to the change and told Captain Scott-Bey that she believed that the decision was made for personal rather than professional reasons, Captain Scott-Bey agreed and stated, "Look at what he did to Bryan [Morris]," referring to Captain Bryan Morris, who was transferred by Lieutenant Bradley to another Department because he was a candidate for the position of Chief of Police, a position coveted by and eventually obtained by Lieutenant Bradley.

16.    Subsequently, on January 8, 2002, Captain Scott-Bey transferred Ms. Robinson from the South District to the South District PAC (Partners Against Crime) Unit. The sole reason given by Captain Scott-Bey for the transfer was that he wanted to remove Ms. Robinson from the South District because he believed Lieutenant Bradley was "out to get" Ms. Robinson, and he did not want to be involved in any conflicts within the department.

17.    Despite Ms. Robinson's transfer to the South District PAC unit, Lieutenant Bradley continued to interfere with Ms. Robinson's employment. In January of 2002, Lieutenant Bradley assigned Ms. Robinson to a walking post on Bergen Street and rejected proposals from Ms. Robinson's supervising lieutenant, Lieutenant Niles Wilson, to grant her a vehicle.

18.     The retaliation against Ms. Robinson escalated after Sergeant McMillan filed a civil action with the Superior Court of New Jersey, Law Division, Essex County, charging the City of Newark and Lieutenant Bradley with sexual harassment, sex discrimination and retaliation in violation of New Jersey's Law Against Discrimination.

19.     On April 30, 2004, Lieutenant Bradley, in a deliberate effort to undermine Ms. Robinson's performance, sent a memo to Captain Scott-Bey alleging that Ms. Robinson had failed to follow the chain of command by faxing reports directly to Deputy Chief Bryan Morris.     Although Captain Scott-Bey eventually declined to issue administrative charges, the letter became part of Ms. Robinson's personnel file.

20.     On May 12, 2004, Lieutenant Bradley further retaliated against Ms. Robinson and subjected her to a hostile work environment by issuing a memo reorganizing Ms. Robinson's unit removing her from her position as Partners Against Crime (PAC) Program Coordinator, a position that she had held for over two years, and reassigning her to foot patrol.

21.     Despite being reassigned to foot patrol, Ms. Robinson was allowed to finish out her PAC summer camp duties before she went on vacation from August 15, 2004 to October 1, 2004.

22.     Unable to harass Ms. Robinson on the job because she was on vacation, Defendants began stalking Ms. Robinson at her place of business.  In or about September 2004, Lieutenant Bradley and his police detectives began stalking Ms. Robinson, outside of work, at her place of business, causing her extreme emotional distress.

23.     On one occasion, Bradley and one of his drivers, Detective Anthony Williams, parked directly across the street from Ms. Robinson's Rita's Italian Ice

5

businesses, close enough that they could make eye contact with Ms. Robinson, and remained there for approximately one-half hour.

24.     For three consecutive days following this incident, Ms. Robinson observed a vehicle believed to be an unmarked police car parked in the mall parking lot where Ms. Robinson's Italian ice business is located.

25.     The Department further attempted to unlawfully interfere with Ms. Robinson's business and damage Ms. Robinson's business reputation when on October 22, 2004, Sergeant Dennis Sanders of the Newark Police Department called the corporate headquarters of Rita's Italian Ice, through which Ms. Robinson operated her businesses, and demanded information on the franchise owned and operated by Ms. Robinson. Lieutenant Sanders spoke to several people at the company and insinuated to each that something was seriously amiss with the franchise owned by Ms. Robinson.

26.     Sergeant Sanders indicated that he was from Internal Affairs and that Ms. Robinson was being investigated.

27.     When Ms. Robinson returned from vacation on October 1, 2006, she was assigned exclusively to foot patrol.

28.     Defendants further subjected Ms. Robinson to a hostile work environment when on October 23, 2004, without regard to Ms. Robinson's personal safety, Defendants ordered just two police officers, Ms. Robinson and police officer Yolanda Foster, to walk the Baxter Terrace Projects, a notoriously dangerous area, despite the fact that the Police Director had previously mandated that no fewer than two two-man unit cars be dispatched to this area for all calls.

29.     Defendants further subjected Ms. Robinson to a hostile work environment when on November 2, 2004, Ms. Robinson was called in for questioning as part of an internal affairs investigation regarding an incident allegedly involving Bryan Morris and Ms. Robinson and was interrogated at length by Sergeant Sanders regarding the alleged incident, Ellen McMillan, and Ms. Robinson's outside business interests, including Rita's Italian Ice and South Jelly's Dominican Doobies Hair Salon.

30.     Defendants further humiliated Ms. Robinson and invaded her privacy when Sergeant Sanders questioned all of the officers in the Partners Against Crime evening crew regarding Ms. Robinson's businesses interests and Ms. Robinson's supervisor Captain Sheila Coley, making it appear that Ms. Robinson had been operating her businesses on police department time, thus causing Ms. Robinson extreme humiliation and embarrassment and tarnishing her reputation within the department. Other officers who operated outside businesses were not investigated in this manner.

31.     Sergeant Sanders, the officer conducting the interview, later apologized to Ms. Robinson, because it was clear to him that that there was no basis for the investigation.

32.     Defendants further retaliated against Ms. Robinson when on or about November 16, 2004, Defendant Bradley falsely and maliciously filed a memo unfairly reprimanding Ms. Robinson for failing to file log sheets, when in fact Ms. Robinson was at a meeting and not on patrol and therefore not required to file a log sheet. Lt. MacPhee filed a report in response to Defendant Bradley's memo, and no administrative charges were brought against Ms. Robinson. Nevertheless, the memo was made part of her in personnel file.

33.     Ms. Robinson was subjected to further retaliation and intimidation after Sergeant McMillan submitted responses to interrogatories in her pending sexual harassment suit, on or about November 23, 2004, identifying both Ms. Robinson and Deputy Chief Bryan Morris as potential witnesses in her sexual harassment case.

34.     Police Officer Aloma Wright refused to correct Ms. Robinson's statistical information after Ms. Robinson advised her that her statistical information was incorrect, and repeatedly told Ms. Robinson that she only does "what Chief Bradley tells [her] to do," in an effort to intimidate Ms. Robinson.

35.     Ms. Robinson filed a report with Acting Deputy Chief Brian Gavin regarding the intimidation by Ms. Wright, but Deputy Chief Gavin failed to take any remedial action.

36.     Beginning on January 30, 2005, and continuing on regular basis, Newark City Police officers working under the direction of Chief Bradley stalked, harassed and intimidated Ms. Robinson.

37.     On January 30, 2005, while on foot patrol speaking to a citizen, Ms. Robinson observed a gold SUV slow down and an individual, whom she recognized as Sergeant William Thomas, look directly at her.  After Ms. Robinson finished speaking to the citizen, she took a circuitous route through the neighborhood in order to avoid Thomas, but he continued to follow Ms. Robinson for approximately one-half hour to forty-five minutes.

38.     On February 2, 2005, Ms. Robinson observed the same gold SUV parked outside the mini-precinct in the vicinity of Ms. Robinson's hair salon for approximately two hours.

8

39. Thereafter, on February 7, 2005, Ms. Robinson again observed a suspicious vehicle pass her while on patrol.

40. On February 8, 2005, while on foot patrol, Ms. Robinson observed a white Crown Victoria with New Jersey plates circle the block three times and recognized the driver of the vehicle as an undercover police officer.

41. That same day Ms. Robinson observed three other suspicious vehicles that appeared to be following her.

42. On February 24, 2005, Ms. Robinson again observed a suspicious vehicle that also appeared to be following her. Ms. Robinson was considerably shaken by each of these incidents, which individually and collectively caused her to fear for her personal safety.

43. On February 8, 2005, Lieutenant Bradley maliciously and vindictively directed Acting Lieutenant MacPhee to order Officer Yolanda Foster and Ms. Robinson "not to set foot" on Bergen Street, which was part of their grid, during their patrol, because there was no longer a fixed post on Bergen Street.   As a result of this directive, Officers Foster and Robinson were forced to take an indirect route both from the precinct to the patrol route and from one part of the route to another. They were banned from walking on Bergen Street, even on their way home. Having been stalked and her grid now having been narrowed, Ms. Robinson became increasingly fearful for her personal safety.

44. Defendants continued their retaliation against Plaintiff when in February 2005, Police Officer Aloma Wright falsely and maliciously made statements to various individuals, including Police Officers Jonathan Taylor, Mark Williams, Karima Hanibal,

9

and Yolanda Foster that Ms. Robinson stole $30,000 from the PAC program and would be put in jail.

45.    Chief Bradley, with the assistance of Councilman Donald Bradley, also falsely and maliciously made statements to others including Ms. Robinson's godmother, Mary Singleton, that Ms. Robinson stole $30,000 from the PAC program.

46.    Chief Bradley further retaliated against Ms. Robinson by calling for an audit of the PAC program.  Captain Machia performed the audit and no irregularities were found.

47.    Ms. Robinson was subjected to further retaliation when Lieutenant MacPhee refused to grant Ms. Robinson four emergency vacation days after Ms. Robinson's cousin and cousin's daughter were kidnapped and held hostage at gunpoint, on the pretext that she had failed to complete the necessary paperwork first.  Only after Ms. Robinson went to Lieutenant Coley was Ms. Robinson allowed to take the four days off and told not to worry about the paperwork, which she could complete on her return.

48.    As a result of the continuing and unrelenting harassment by Defendants, Ms. Robinson was eventually forced to sell her hair salon, South Jelly's Dominican Doobies, in May of 2005.

49.    In an effort to further intimidate Ms. Robinson, on Saturday, June 18, 2005, Lieutenant Casale called Ms. Robinson to the precinct for questioning regarding the McMillan sexual harassment matter.  At that time, the questioning went far beyond the business purpose of the litigation when she was questioned by Chief Bradley's lawyer, Susan Singer, regarding both the McMillan sexual harassment case and other

personal matters, including her business relationships with Deputy Chief Bryan Morris and Ellen McMillan.

50.    Defendants further subjected Ms. Robinson to a hostile work environment on the basis of her disabilities when on August 8, 2005, Ms. Robinson received a disciplinary warning a pattern for a pattern of booking off sick on the weekend or the day before or after the weekend, after she had taken legitimate time off for severe migraines, knee injuries and other disabilities.

51.    On November 29, 2005, Ms. Robinson's attorneys sent a letter to Police Director Ambrose detailing Ms. Robinson's claims of unlawful discrimination including a hostile work environment and retaliation and violation of her First Amendment right to association.

52.    Defendants further retaliated against Ms. Robinson when on Monday, December 12, 2005, less than two weeks after Plaintiff's attorneys sent their demand letter, Lieutenant Kinder of the Newark Police Department's Medical Services Unit called Ms. Robinson, who was on long term administrative sick leave, at home and ordered her to report to the Medical Services Unit on Friday, December 16, 2005, at 9:00 a.m. in order to be evaluated by the "Police Surgeon." Lieutenant Kinder further informed Ms. Robinson that the doctor's note that she had previously provided was not sufficient and that she must provide additional medical documentation in the form of her doctor's transcribed notes.

53.    Ms. Robinson had already provided a note from her treating physician containing all the required information, and the note had not yet expired.

54. On Friday, December 16, 2005, Ms. Robinson reported to the Medical Services Unit to be evaluated by Dr. Anthony Ciccone, the Newark Police Department physician, as ordered. Dr. Ciccone had a tape recorder, and was prepared to tape record his conversation with Ms. Robinson. When Ms. Robinson requested that she also be allowed to tape record the conversation, Dr. Ciccone refused to perform the evaluation, and instead ordered Ms. Robinson to "get out."

55. When Ms. Robinson asked what type of documents the Department was looking for, Dr. Cicconne yelled, "tell your lawyer to put it in writing what she is looking for," and then yelled, "I want MRI's, copies of your folder, and doctor's notes."

56. There is nothing in the Department's Sick Leave Policy that requires an employee who is on long-term administrative sick leave to provide copies of his/her treating physician's transcribed notes, nor has any other Newark Police Department employee on long-term administrative sick leave ever been required to submit transcribed physician notes.

57. The additional requirement that Ms. Robinson provide her doctor's transcribed notes was created solely to harass Ms. Robinson for objecting to Defendant's unlawful and discriminatory acts in violation of the LAD.

58. Defendant City of Newark has failed to enforce and adhere to an effective harassment and discrimination policy for its employees that prevents and protects against unlawful conduct in the nature of sexual harassment, retaliation, and other forms of discriminatory and tortious activity.

59. Defendant City of Newark ratified, participated in, and/or acquiesced to the retaliatory and tortious conduct perpetuated upon Ms. Robinson and has otherwise

acted with willful indifference to Ms. Robinson's entitlement to a workplace free from harassment, discrimination, retaliation, and other tortious interference.

60.     As a result of the foregoing, Ms. Robinson has incurred physical and emotional injuries, including but not limited to, insomnia, depression, anxiety, headaches, chest pains and high blood pressure.

## FIRST COUNT

### (Retaliation/Violation of Law Against Discrimination)

61.     Plaintiff Janell Robinson incorporates the allegations set forth in paragraphs 1 through 60, as if fully set forth herein.

62.     As a result of aiding and encouraging fellow police officer, Sergeant Ellen McMillian in the exercise of her right to oppose unlawful discrimination, granted and protected by New Jersey's Law Against Discrimination, Ms. Robinson has been subject to unlawful retaliation and reprisals by Defendants, including but not limited to, a hostile work environment, in violation of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 to –42.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, and in their individual and official capacities, awarding her:

A.     Equitable damages, including but not limited to, lost wages and interest, based upon Defendants' unlawful conduct;

B.     Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

13

C.    Punitive damages for Defendants' extreme and outrageous conduct toward Ms. Robinson;

D.    Costs of suit, including reasonable attorneys fees;

E.    Injunctive relief, enjoining Defendants from subjecting Ms. Robinson to further discrimination and retaliation and other unlawful conduct under New Jersey's Law Against Discrimination; and

F.    Such other relief deemed by the Court to be equitable and just, as provided by law.

## SECOND COUNT

### Disability Discrimination/Violation of Law Against Discrimination

63.    Plaintiff incorporates the allegations set forth in Paragraphs 1 through 62, as if fully set forth herein.

64.    Defendants, based on the allegations set forth above, have subjected Ms. Robinson to unlawful discrimination on the basis of her disabilities, including disparate treatment on the basis of her disabilities, which discriminatory conduct was sufficiently severe or pervasive so as to alter the conditions of Ms. Robinson's employment and create a hostile, abusive and offensive working environment in violation of New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 to –42.

65.    Defendants, are strictly and vicariously liable for their hostile work environment disability harassment against Ms. Robinson.

14

**WHEREFORE,** Plaintiff Janell Robinson demands judgment against Defendants, jointly and severally, and in their official and individual capacities, awarding her:

A.    Equitable damages, including but not limited to, back pay, lost wages, interest, and other benefits of employment, based upon Defendants' unlawful conduct;

B.    Compensatory damages, including but not limited to, all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.    Punitive damages for Defendants' extreme and outrageous conduct toward Janell Robinson;

D.    Costs of suit, including reasonable attorneys fees;

E.    Injunctive relief, enjoining Defendants from subjecting Ms. Robinson to further discrimination and retaliation and other unlawful conduct under New Jersey's Law Against Discrimination; and

F.    Such other relief deemed by the Court to be equitable and just, as provided by law.

## THIRD COUNT

**(Aiding, Abetting, Inciting, Compelling and/or Coercing in Violation of New Jersey's Law Against Discrimination)**

66.    Ms. Robinson incorporates the allegations set forth in Paragraphs 1 through 65, as if fully set forth herein.

67.    Defendants, based on the allegations set forth above, have aided, abetted, incited, compelled and/or coerced the doing of acts forbidden under the Law Against Discrimination, in violation of, among other things, N.J.S.A. 10:5-12(e).

WHEREFORE, Plaintiff demands judgment against 1983 Defendants, jointly and severally, and in their official and individual capacities, awarding her:

A.    Equitable damages, including but not limited to lost wages and interest;

B.    Compensatory damages, including but not limited to all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.    Punitive damages for Defendants' extreme and outrageous conduct towards Ms. Robinson;

D.    All costs of suit, including reasonable attorneys fees;

E.    Any and all such other relief deemed by the Court to be equitable and just, as provided by law.


## FOURTH COUNT

### (Section 1983 Violations)

68.    Plaintiff Janell Robinson incorporates paragraphs 1 through 67, as though set forth at length herein.

69.    The aforementioned actions of Defendants Irving Bradley, Anthony F. Ambrose III, and Dennis Sanders (hereinafter, the "1983 Defendants") were a part of a policy, practice and custom of the 1983 Defendants, which were adopted by them, whether formally or in fact.

70.    The 1983 Defendants, in acting under the color of state law, did intentionally and maliciously deny Ms. Robinson constitutional rights under the First Amendment clause of the United States Constitution and New Jersey Constitution under 42 U.S.C. § 1983, including her First Amendment right to association, when the 1983

16

WHEREFORE, Plaintiff demands judgment against 1983 Defendants, jointly and severally, and in their official and individual capacities, awarding her:

A.     Equitable damages, including but not limited to lost wages and interest;

B.     Compensatory damages, including but not limited to all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.     Punitive damages for Defendants' extreme and outrageous conduct towards Ms. Robinson;

D.     All costs of suit, including reasonable attorneys fees;

E.     Any and all such other relief deemed by the Court to be equitable and just, as provided by law.

## FOURTH COUNT

### (Section 1983 Violations)

68.     Plaintiff Janell Robinson incorporates paragraphs 1 through 67, as though set forth at length herein.

69.     The aforementioned actions of Defendants Irving Bradley, Anthony F. Ambrose III, and Dennis Sanders (hereinafter, the "1983 Defendants") were a part of a policy, practice and custom of the 1983 Defendants, which were adopted by them, whether formally or in fact.

70.     The 1983 Defendants, in acting under the color of state law, did intentionally and maliciously deny Ms. Robinson constitutional rights under the First Amendment clause of the United States Constitution and New Jersey Constitution under 42 U.S.C. § 1983, including her First Amendment right to association, when the 1983

16

Defendants unlawfully subjected Ms. Robinson to a hostile work environment in retaliation for her association with fellow officer, Ellen McMillan, who objected to Defendants' acts of sexual harassment and discrimination in violation of, among other things, the Law Against Discrimination and applicable State and Federal Constitutions; and in retaliation for her association with Police Captain Bryan Morris.

71.   The aforementioned actions and conduct of the 1983 Defendants denied Ms. Robinson her right to association under the First Amendment of the United States Constitution and the New Jersey Constitution by penalizing her for associating with fellow officer, Ellen McMillan, who asserted her First Amendment rights; and with Deputy Chief, Bryan Morris.

72.   The foregoing actions by the 1983 Defendants caused Ms. Robinson to incur considerable economic harm and emotional distress damages.

WHEREFORE, Plaintiff demands judgment against 1983 Defendants, jointly and severally, and in their official and individual capacities, awarding her:

A.   Equitable damages, including but not limited to lost wages and interest;

B.   Compensatory damages, including but not limited to all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.   Punitive damages for Defendants' extreme and outrageous conduct towards Ms. Robinson;

D.   All costs of suit, including reasonable attorneys' fees;

E.   Any and all such other relief deemed by the Court to be equitable and just, as provided by law.

17

## FIFTH COUNT

### (Violation of the Federal Family and Medical Leave Act)

73.    Ms. Robinson incorporates the allegations set forth in paragraphs one through 72 as if fully set forth herein.

74.    Defendants have violated the Federal Family and Medical Leave Act by failing to provide Ms. Robinson with notice of her rights and its obligations under the Federal Family and Medical Leave Act and subjecting Ms. Robinson to harassment for exercising her right to take medical leave under the Federal Family and Medical Leave Act.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, and in their official and individual capacities, assessing penalties and sanctions, and awarding her:

A.    Equitable damages, including but not limited to, lost wages, benefits and interest, denied to her;

B.    Compensatory damages, including but not limited to, all damages for pain and suffering and other loses resulting from Defendants' unlawful actions;

C.    Punitive damages for Defendants' extreme and outrageous conduct and willful and wanton disregard for Ms. Robinson's entitlement to family leave;

D.    Liquidated damages;

E.    Costs of suit, including reasonable attorneys' fees; and

F.    Such other relief deemed by the Court to be equitable and just, as provided by law.

## SIXTH COUNT

### (Intentional Infliction of Emotional Distress)

75.    Plaintiff Janell Robinson incorporates the allegations set forth in paragraphs 1 through 74 as if fully set forth herein

76.    By their extreme and outrageous conduct beyond the bounds of decency, Defendants exhibited a deliberate and reckless disregard for the mental and emotional well-being of plaintiff.

77.    Defendants, through engaging in and permitting an ongoing pattern of intentional harassment and offensive actions and statements as recited above, intentionally caused Ms. Robinson to suffer severe embarrassment, humiliation, ridicule, mental anguish, and emotional distress.

78.    The emotional distress inflicted by the Defendants on Ms. Robinson caused physical and emotional injuries including, but not limited to, insomnia, depression anxiety, headaches, chest pains and high blood pressure.

79.    Defendants are strictly and vicariously liable for their intentional infliction of emotional distress against Ms. Robinson.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, and in their individual and official capacities, awarding her:

A.    Equitable damages, including but not limited to lost wages and interest, based upon Defendants' unlawful conduct;

B.    Compensatory damages, including but not limited to all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.    Punitive damages for Defendants' extreme and outrageous conduct toward Ms. Robinson;

D.      Costs of suit, including reasonable attorneys' fees;

E.      Injunctive relief requiring Defendants to refrain from such tortious conduct; and

F.      Such other relief deemed by the Court to be equitable and just, as provided by law.

## SEVENTH COUNT

### Breach of Public Policy

80.     Plaintiffs incorporate paragraphs 1 through 79, as though set forth at length herein.

81.     Defendants have subjected Ms. Robinson to a hostile work environment, causing her to suffer adverse employment actions, and have violated Ms. Robinson's right to association, in violation of the public policies of the State of New Jersey.

**WHEREFORE,** Plaintiff Janell Robinson demands judgment against Defendants, jointly and severally, and in their official and individual capacities, awarding her:

A.      Equitable damages, including but not limited to lost wages and interest, based upon Defendants' unlawful conduct;

B.      Compensatory damages, including but not limited to all damages for pain and suffering and other losses resulting from Defendants' unlawful actions;

C.      Punitive damages for Defendants' extreme and outrageous conduct toward Ms. Robinson;

D.      Costs of suit, including reasonable attorneys' fees;

E.      Injunctive relief requiring Defendants to refrain from such tortious conduct; and

F.      Such other relief deemed by the Court to be equitable and just, as provided by law.

WONG FLEMING
A Professional Corporation
Attorneys for Plaintiff Janell Robinson

By: _____
LINDA WONG

Dated:  June 16, 2006

## RULE 4:5-1 CERTIFICATION

I hereby certify that the above entitled matter is not the subject of any other arbitration proceedings or Court proceedings, nor am I aware that such proceedings are contemplated.

By: _____
LINDA WONG

Dated:  June 16, 2006

21

## DEMAND FOR JURY TRIAL

Plaintiff Janell Robinson hereby demands a trial by jury as to all issues.

WONG FLEMING
A Professional Corporation
Attorneys for Plaintiff Janell Robinson

By: _____
     LINDA WONG

Dated: June 16, 2006

## NOTICE OF DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Daniel C. Fleming and Linda Wong are jointly designated as trial counsel on behalf of Plaintiff in this matter.

WONG FLEMING
A Professional Corporation
Attorneys for Plaintiff Janell Robinson

By: _____
     LINDA WONG

Dated: June 16, 2006

22

ESSEX COUNTY
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK          NJ 07102

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 693-6651
COURT HOURS

DATE:   JUNE 13, 2006
RE:     ROBINSON VS CITY OF NEWARK
DOCKET: ESX L -005140 06

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON F X. GILES

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT: (973) 693-6528.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

ATTENTION:

ATT: LINDA A. WONG
WONG FLEMING PC
821 ALEXANDER ROAD
SUITE 150   SUITE 150
PRINCETON       , NJ 08543-3663

JUVON